UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-80574-BLOOM/Reinhart

RICHARD RITENOUR,

    Plaintiff,

v.

AMERIGAS PROPANE, INC.,

    Defendant.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendant AmeriGas Propane, Inc.'s ("Defendant" or "AmeriGas") Motion for Summary Judgment, ECF No. [26] ("Motion"), filed on January 4, 2019. The Court has considered the Motion, the record, the parties' briefs, and the applicable law. For the reasons set forth below, the Defendant's Motion is granted.

**I.  BACKGROUND**

Plaintiff Richard Ritenour ("Plaintiff" or "Ritenour") originally filed his Complaint in the Circuit Court in the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. *See* ECF No. [1-1]. The action was subsequently removed to federal court on the basis of diversity jurisdiction. ECF No. [1]. Plaintiff asserts a single count against the Defendant for an alleged violation of the Florida Private Whistleblower Act pursuant to Florida Statute § 448.102(3). *See* ECF No. [1-1], at 4. This action arises as a result the Plaintiff's termination from his employment by AmeriGas.

From 2012 to 2016, AmeriGas employed Plaintiff as a propane delivery representative. Defendant's Statement of Material Facts ("Deft's SOF"), ECF No. [25], at ¶¶ 1-2; *see also*

Plaintiff's Statement of Material Facts ("Plf's SOF"), ECF No. [29], at ¶¶ 1-2.  Plaintiff's employment with AmeriGas was terminated on February 2, 2016. *Id.*

Kelly Dortch ("Dortch") was the District Manager of AmeriGas for the West Palm Beach Region. Deft's SOF, ECF No. [25], at ¶ 4; *see also* Plf's SOF, ECF No. [29], at ¶ 4.  Paul Hugelmeyer ("Hugelmeyer") was the Operations Manager of AmeriGas for West Palm Beach Region. Deft's SOF, ECF No. [25], at ¶ 5; *see also* Plf's SOF, ECF No. [29], at ¶ 5.

Some of AmeriGas' vehicles contained a camera known as a "Drivecam," which was designed to be triggered to record video footage when certain "events" would occur.  Deft's SOF, ECF No. [25], at ¶ 16; *see also* Plf's SOF, ECF No. [29], at ¶ 16.  These events included, but were not limited to, sudden braking, sudden movements, excessive speed, and cornering at speeds in excess of 15 miles per hour. *Id.*  The Drivecam was occasionally triggered by "non-events" as well. Plf's SOF, ECF No. [29], at ¶ 16.  For example, Plaintiff maintains that "going over a bump or hole in the road would frequently trigger the Drivecam," and that the Drivecam could also be triggered as a "cornering event" when the driver was "entering or exiting a freeway on a curved ramp." *Id.*  Once captured, the Drivecam footage was automatically sent to Mike Podlaski ("Podlaski"), the Area Safety Advisor, to review and determine if a violation of an AmeriGas safety policy occurred.  Deft's SOF, ECF No. [25], at ¶ 17; *see also* Plf's SOF, ECF No. [29], at ¶ 17.  If an AmeriGas safety policy was violated, the employee received coaching or discipline in an effort to prevent future safety violations. Deft's SOF, ECF No. [25], at ¶ 18. The Plaintiff does not deny that it was company policy to issue coachings or discipline to employees who violated safety policy. Rather, the Plaintiff contends that the Defendant did not apply "discipline to safety violations equally to all employees."  Plf's SOF, ECF No. [29], at ¶ 18.

During the course of his employment with AmeriGas, Plaintiff received discipline in the form of coaching, written warnings and suspension from work for multiple violations of AmeriGas driving safety policies.  Deft's SOF, ECF No. [25], at ¶ 19.  Plaintiff, however, denies that "Defendant considered coaching to be discipline," and rather "coaching" was used for "non-serious issues."  Plf's SOF, ECF No. [29], at ¶ 19.  Nonetheless, Plaintiff admits to receiving discipline on the following dates:[1]

On **December 27, 2012**, Plaintiff received coaching for wearing a Bluetooth device while driving.  Ritenour Dep., ECF No. [25-1], at 123:10-14.

On **January 21, 2013**, Plaintiff received coaching for failing to look ahead while driving for vehicles braking. Ritenour Dep., ECF No. [25-1], at 123:24-124:12.

On **January 29, 2013**, Plaintiff was issued a written warning for following another vehicle too closely.  Plf's SOF, ECF No. [29], at ¶ 25.  At this time, Plaintiff was warned, in writing, that he "must change his driving behavior" and that if he did not, AmeriGas would "continue with progressive discipline, up to and including termination. Plf's SOF, ECF No. [29], at ¶ 26.

On **May 29, 2013**, Plaintiff received coaching, in writing, for excessive cornering speed, at which time Plaintiff was advised to "make sure he is slowing down to 15 [mph] and under when cornering." Plf's SOF, ECF No. [29], at ¶ 29.

On **July 9, 2013**, Plaintiff received verbal coaching for failing to make a full stop at a railroad crossing. Ritenour Dep., ECF No. [25-1], at 131:13-19.  Plaintiff admitted that he committed the violation by making a rolling stop and that the coaching was appropriate.  Plf's SOF, ECF No. [29], at ¶ 32.

---

[1] These dates represent only the dates that Plaintiff admitted or testified during his deposition that he was disciplined by AmeriGas for safety violations.  Defendant asserts that Plaintiff was disciplined on seven other occasions, in addition to the dates listed in this Order. However, Plaintiff denies receiving such discipline or testified that he does not recall the incidents.  *See generally*, Plf's SOF, ECF No. [29], at ¶¶ 28, 34, 36, 38, 47, 48, 51.

3

On **February 8, 2014**, Plaintiff was issued a written warning for driving with an electronic Bluetooth device. Plf's SOF, ECF No. [29], at ¶ 40. At this time, Plaintiff was advised, in writing, that he "must follow all company policies" and that "if he failed to do so" AmeriGas would "continue with progressive discipline, up to and including termination." Plf's SOF, ECF No. [29], at ¶ 42.

On **February 26, 2014**, Plaintiff was issued a written warning and was *suspended for five days* from work after two violations that occurred a couple days prior. Plf's SOF, ECF No. [29], at ¶ 43. One of those violations came as a result of Ritenour backing into a customer's bronze sculpture, and the other was as a result of his failure to make a complete stop at a railroad crossing. *Id.* At this time, Plaintiff was advised that he had to "refocus on safe driving" and that "[i]f there are any more issues" AmeriGas would "continue with progressive discipline, up to an including termination." Plf's SOF, ECF No. [29], at ¶ 46.

On **August 15, 2014**, Plaintiff received coaching, in writing, for excessive cornering speed. Plf's SOF, ECF No. [29], at ¶ 49.

On **December 2, 2014**, Plaintiff received coaching, in writing, for two instances of excessive cornering speed which occurred on November 19, 2014, and November 21, 2014. Plf's SOF, ECF No. [29], at ¶ 52.

On **April 30, 2015**, Plaintiff received coaching, in writing, for delay in responding to a traffic situation ahead due to driving too closely. Plf's SOF, ECF No. [29], at ¶ 54.

On **June 22, 2015**, Plaintiff received coaching, in writing, after he failed to properly check the mirrors two times on each side of his vehicle prior to changing lanes. Plf's SOF, ECF No. [29], at ¶ 55.

On **July 1, 2015**, Plaintiff was issued a written warning for excessive cornering speed. Plf's SOF, ECF No. [29], at ¶ 57.

**On February 2, 2016**, Plaintiff was suspended for three days after another instance of excessive cornering speed. Plf's SOF, ECF No. [29], at ¶ 60. At this time, he was advised by Dortch that they had "spoken about [cornering at excessive speeds] many times." ECF No. [25-5], at 12. Plaintiff was also advised that he "must corner at the proper speed," and that if he did not, he would face "progressive discipline, up to and including termination." *Id.*

Beginning in mid-2014 and continuing through early 2016, Plaintiff alleges that during his employment with AmeriGas, he made several verbal complaints that AmeriGas was engaged in unlawful trade practices. Plf's SOF, ECF No. [29], at ¶¶ 6, 138. Generally, Plaintiff's complaints were two-fold. First, Plaintiff asserts that AmeriGas instructed its employees to make multiple unnecessary deliveries for "small amounts" in order to profit from its customers by charging them a fuel surcharge and hazmat charge for the delivery.[2] *Id.* at ¶ 111. Ritenour further claims that this conduct amounted to "stealing" from its customers because AmeriGas was "charging money to customers that did not need to be charged". ECF No. [25-1], at 88:14-6, 89:4-19. During deposition, Plaintiff testified that the first time he complained to anyone in management about the Unnecessary Deliveries was sometime in 2014. ECF No. [25-1], at 83:24-84:8 ("Q. So when was the first time that you made a complaint to management about going out and making small deliveries and customers unnecessarily getting a service charge or hazmat charge? . . . A. I think it was in 2014."). Plaintiff claimed that "[t]he big complaints, the last complaints that caused the most friction between me and management were to do with the over-deliveries, the delivering over and over and over again for no reason." *Id.* at 85:13-18. While Plaintiff could not recall the

---

[2] For ease of reference, such conduct shall be referred to herein as the "Unnecessary Deliveries."

specific timing of his complaints, Plaintiff testified during deposition that he made complaints about the Over Deliveries to Dortch and Hugelmeyer "a lot" in 2014 and "multiple times" in 2015 and 2016. *Id.* at 90:3-6, 90:13-23, 73:20-74:2. Second, Plaintiff claims that AmeriGas instructed its employees to overfill customers' propane tanks past 80%.[3] Propane tanks must not be filled over 80% due to safety reasons. Plf's SOF, ECF No. [29], at ¶ 105. During deposition, Plaintiff testified that around November or December 2014, he complained to Dortch that other drivers were overfilling customers' propane tanks to 85 % instead of 80%. Ritenour Dep., ECF No. [25-1], at 68:2-14. Plaintiff further testified that his "only complaint to management that was done [was at that time] to [Dortch] about the overfilling." *Id.* at 71:19-22.

Plaintiff contends that he complained about the Unnecessary Deliveries and the Overfilling to his supervisors, Dortch and Hugelmeyer. Plf's SOF, ECF No. [29], at ¶ 6. Plaintiff testified that in addition to voicing his concerns to Dortch and Hugelmeyer, he also voiced his concerns about the company's business practices during the company's meetings, including certain meetings where Podlaski was present. Ritenour Dep., ECF No. [25-1], at 88:4-9; 111:10-113:24. Plaintiff also testified that none of these complaints or conversations with Podlaski occurred with Podlaski directly, but rather that Plaintiff was "sure he overheard [Ritenour] talking about the deliveries that did not need to be done." Ritenour Dep., ECF No. [25-1], at 114:4-7. Plaintiff never submitted a written complaint about the company's business practices to anyone in the company, nor did he ever call the ethics hotline to report any of the issues alleged in this lawsuit. Plf's SOF, ECF No. [29], at ¶¶ 98-99.

In the Complaint, Plaintiff claims that "[s]hortly after Plaintiff verbalized his objections to Defendant's management and refused to participate in Defendant's unlawful acts, Defendant

---

[3] For ease of reference, such conduct shall be referred to herein as "Overfilling."

began to allege problems with Plaintiff's work performance." ECF No. [1-1], at 3. The Plaintiff, however, admits that he received at least five instances of discipline for violating AmeriGas driving guidelines prior to voicing any of his complaints to any of AmeriGas' management. *See generally*, Ritenour Dep., ECF No. [25-1], at 123:10-14; 123:24-124:12; Plf's SOF, ECF No. [29], at ¶¶ 26, 29, 32. The Plaintiff's Complaint is devoid of any specific dates in which the Plaintiff claims he voiced his complaints about either the Overfilling or the Unnecessary Deliveries to anyone at AmeriGas. *See Generally*, ECF No. [1-1].

Plaintiff testified during deposition that the "biggest issue" AmeriGas had with him was his issues relating to his excessive cornering speeds. Ritenour Dep., ECF No. [25-1], 119:17-21. On February 2, 2016, the same day Plaintiff had been suspended for the February 1, 2016, cornering incident, Podlaski received another video demonstrating another incident of cornering from that same day. Deft's SOF, ECF No. [25], at ¶ 63. After reviewing the Drivecam footage, Podlaski sent the video via email to Dortch (the District Manager), and Lisa Cassun-Eilers ("Cassun-Eilers"), the AmeriGas Area Director for West Palm Beach. ECF No. [25-8]; Deft's SOF, ECF No. [25], at ¶ 65; *see also* Plf's SOF, ECF No. [29], at ¶ 65. Podlaski then emailed Dick Tyson ("Tyson"), the Southern Regional Safety Manager and Debby Ranson ("Ranson"), the Human Resource Manager for AmeriGas Southern Region, copying Dortch and Cassun-Eilers, and advising the email recipients that he "had concerns that Plaintiff was a safety liability to himself, the public, and AmeriGas based upon his driving history and in light of the most recent drivecam video." Deft's SOF, ECF No. [25], at ¶¶ 66, 69; *see also* Plf's SOF, ECF No. [29], at ¶¶ 66, 69; ECF No. [25-8]. The email further detailed some of Plaintiff's past disciplinary history related to his driving. ECF No. [25-8]; Deft's SOF, ECF No. [25], at ¶ 69; *see also* Plf's SOF, ECF No. [29], at ¶ 69. In the email, Podlaski then asked Tyson and Ranson whether the latest event

Case 9:18-cv-80574-BB   Document 46   Entered on FLSD Docket 03/15/2019   Page 8 of 20

Case No. 18-cv-80574-BLOOM/Reinhart

was enough to escalate Plaintiff's three-day suspension to a termination. ECF No. [25-8]; Deft's SOF, ECF No. [25], at ¶ 69; *see also* Plf's SOF, ECF No. [29], at ¶ 69.

AmeriGas' safety guidelines set forth procedures regarding disciplining employees for safety violations. Deft's SOF, ECF No. [25], at ¶ 70; *see also* Plf's SOF, ECF No. [29], at ¶ 70. The guidelines provided that three occurrences of certain unsafe driving behaviors, including excessive cornering speeds by an employee within a twelve-month period, could warrant termination of employment with AmeriGas. Deft's SOF, ECF No. [25], at ¶ 71; *see also* Plf's SOF, ECF No. [29], at ¶ 71. On February 2, 2019, Plaintiff's suspension was elevated from a suspension to a termination. Deft's SOF, ECF No. [25], at ¶¶ 2, 72; *see also* Plf's SOF, ECF No. [29], at ¶¶ 2, 72. Defendant claims that the reason for Plaintiff's termination of his employment was a result of his history of unsafe driving. Deft's SOF, ECF No. [25], at ¶ 73. According to the Complaint, Plaintiff claims he was terminated in retaliation by the Defendant for "objecting to, and refusing to participate in, Defendant's unlawful activities." ECF No. [1-1], at ¶ 20.

The Defendant moves for summary judgment arguing that Plaintiff has failed to establish a prima facie case under the Florida Whistleblower's Act, and alternatively, it is undisputed that Plaintiff was terminated for a legitimate, non-retaliatory reason. ECF No. [26].

## II.   LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citation to the record, including, *inter alia*, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F. 3d 1235, 1243 (11th Cir. 2008)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).  The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor.  *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant.").  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252.  "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).  The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, L.L.C., 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  The non-moving party must produce evidence, going beyond

9

the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. But even where an opposing party neglects to submit any alleged material facts in controversy, a court cannot grant summary judgment unless it is satisfied that all of the evidence on the record supports the uncontroverted material facts that the movant has proposed. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004).

### III. ANALYSIS

In its Motion, Defendant argues that it is entitled to judgment as a matter of law because (1) Plaintiff cannot establish a prima facie case under the Florida Whistleblower Act, and (2) Defendant has presented undisputed evidence showing Plaintiff was terminated for a legitimate reason. Because the Court finds this first issue is dispositive, it need not address Defendant's second argument regarding the legitimacy of the non-retaliatory reason for which Plaintiff was terminated.

#### A. *Plaintiff Fails to Establish of a Prima Facie Case of Retaliation Under the Florida Whistleblower Act.*

Plaintiff has asserted a claim under Florida's Whistleblower Act ("FWA"), pursuant to Florida Statutes, § 448.102. To state a prima facie case under the FWA, a plaintiff must establish that: (1) plaintiff engaged in a protected activity; (2) plaintiff suffered a materially adverse employment action; and (3) the adverse action was causally connected to the protected activity. *Castillo v. Roche Labs., Inc.*, 467 Fed. Appx. 859, 862 (11th Cir. 2012) ("A plaintiff may establish a prima facie showing of retaliation by showing that he engaged in a protected activity and suffered

an adverse employment action, and that the protected activity and adverse employment action were causally related."); *Rutledge v. SunTrust Bank*, 262 Fed. Appx. 956, 958 (11th Cir. 2008) (same).

In its Motion, Defendant concedes that Plaintiff's termination satisfies the second element required, an adverse employment action, to establish a prima facie case under the FWA. ECF No. [26], at 5. However, Defendant argues that Plaintiff has failed to establish the other two elements required to establish a prima facie case under the FWA. ECF No. [26], at 5. Therefore, the Court will focus its analysis on these elements of the claim.

### *1. Protected Activity*

Pursuant to § 448.102 of the Florida Statutes, "[a]n employer may not take any retaliatory personnel action against an employee because the employee has ... [o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102. In its Motion, Defendant first argues that Plaintiff fails to establish the first element that he was engaged in a statutorily protected activity. ECF No. [26], at 5-9. Defendant argues that in order "to satisfy the first element of a FWA claim, Plaintiff must prove that he objected to conduct that amounted to an actual violation of a law, rule, or regulation." *Id.* at 6. Plaintiff responds that he is not required to prove "an actual violation of law and that [Plaintiff's] reasonable good faith belief that Defendant was violating the law is sufficient." ECF No. [28], at 10. Defendant acknowledges that "[t]here is presently a split among the Florida District Courts of Appeal as to whether a plaintiff in an FWA action must show that he objected to 'an actual violation of law' as opposed to merely showing that he 'had a good faith, objectively reasonable belief' that the employer violated the law." ECF No. [26], at 5. Defendant further admits that this split has yet to be addressed by the Florida Supreme Court. *Id.*

11

To satisfy the "protected activity" element, a plaintiff is "required to show that he objected to or refused to participate in (i) an illegal activity, policy, or practice of an employer, (ii) illegal activity of anyone acting within the legitimate scope of their employment, or (iii) illegal activity of an employee that has been ratified by the employer." *Aery v. Wallace Lincoln–Mercury, LLC*, 118 So.3d 904, 916 (Fla. 4th DCA 2013) (citation and internal quotation marks omitted). In meeting this standard, all that is required is that the "employee have a good faith, objectively reasonable belief that h[is] activity is protected by the statute." *Id.* (quoting *Luna v. Walgreen Co.*, 575 F.Supp.2d 1326, 1343 (S.D. Fla. 2008)).

In *Aery v. Wallace Lincoln–Mercury, LLC*, the Fourth District Court of Appeal held that to prevail on a FWA claim, a plaintiff must demonstrate that he or she held a good faith, reasonable belief that the actions of the employer violated the law. 118 So. 3d 904, 916 (Fla. 4th DCA 2013). Subsequently, in *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 465 (Fla. 2d DCA 2015), the Second District Court of Appeal interpreted the language of FWA to require an actual violation of the law. "*Aery* remains the controlling law on the issue because the discussion concerning the actual violation standard in *Kearns* was only in *dicta*." *Thomas v. Tyco Int'l Mgmt. Co., LLC*, 262 F. Supp. 3d 1328, 1340 n.6 (S.D. Fla. 2017)) (citing *Burns v. Medtronic, Inc.*, No. 8:15-CV-2330-T17-TBM, 2016 WL 3769369, at *5 (M.D. Fla. July 12, 2016) and *Canalejo v. ADG, LLC*, No. 8:14-CV-17-T-MAP, 2015 WL 4992000, at *2 (M.D. Fla. Aug. 19, 2015)).

Here, the Court first notes that the record evidence is conflicting as to whether the Plaintiff held a reasonable belief that the Defendant was engaged in business practices that violated the law. During deposition, when asked whether he considered the Unnecessary Deliveries to be "illegal or more a bad business practice," the Plaintiff responded "[m]ore of bad business practice." ECF No. [25-1], at 87:25-88:3. However, during other portions of the Plaintiff's deposition, he also testified

that by engaging in this conduct (the Unnecessary Deliveries), "[Defendant was] . . . charging money to the customers that didn't need to be charged . . . [Defendant was] *blatantly ripping off customers*." Ritenour Dep., ECF No. [25-1], at 86:14-19 (emphasis added). Relating to the Overfilling of the propane tanks, Plaintiff testified that he believed this conduct to be "freaking illegal." Ritenour Dep., ECF No. [25-1], at 54:13-17.

Taking the evidence in the light most favorable to Plaintiff, there is record evidence, which supports that the Plaintiff held a reasonable belief that the business practices engaged in by AmeriGas violated the law. Accordingly, the Court disagrees with the Defendant that the Plaintiff has not established the first element required for the purposes of surviving summary judgment.

### 2. *Causal Connection*

Next, Defendant argues that Plaintiff cannot establish the third element of causation of his FWA claim for three independent reasons. First, Defendant claims that "it is undisputed that the individuals who made that decision to terminate Plaintiff's employment had no knowledge of Plaintiff's alleged Complaints." ECF No. [26], at 11. Second, Defendant argues that the record demonstrates that Plaintiff's termination was contemplated before the time when Plaintiff's complaints about AmerigGas' practices commenced. *Id.* And lastly, Defendant argues that an intervening act of misconduct by the Plaintiff severed any causal connectivity, if any, to the termination. *Id.*

"To establish a causal connection, a plaintiff must show that the decision-makers were aware of the protected conduct and that the protected activity and the adverse action were not wholly unrelated." *Simpson v. Alabama Dept. of Human Resources*, 2012 WL 5873553, at *4 (N.D. Ala. Nov. 16, 2012) (quoting *Gupta v. Fla. Bd. of Regents,* 212 F. 3d 571, 590 (11th Cir.

13

2000)); *see Shannon v. BellSouth Telecomm., Inc.*, 292 F. 3d 712, 716-17 (11th Cir. 2002). This causal element is broadly construed. *See Higdon v. Jackson*, 393 F. 3d 1211, 1220 (11th Cir. 2004).

As to Defendant's first argument that none of the AmeriGas decisionmakers knew of the Plaintiff's complaints regarding the alleged unlawful business practices, the Court finds this argument to be unavailing. In its Motion, Defendant states that Tyson and Ranson were the decisionmakers who ultimately decided to terminate the Plaintiff. ECF No. [26], at 12. Defendant's argument is essentially that Plaintiff never voiced his concerns about the AmeriGas business practices directly to these decisionmakers, and therefore they could not have knowledge of the protected activity. *Id.* at 12-13. Defendant argues that this fact would demonstrate that Plaintiff's termination was not causally connected to the alleged protected activity. Plaintiff, however, argues that it is a "disputed issue of material fact as to whether the decisionmakers had knowledge of Ritenour's protected activity." ECF No. [28], at 19.

During deposition Plaintiff testified that he directly told his supervisors that he believed AmeriGas' practices were illegal. *Id.* at 93:24-94:2 ("Q: Did you ever indicate to Kelly Dortch or Paul Hugelmeyer that you thought the practices were illegal? A: Yes, I did."). Plaintiff also testified that he made complaints about the alleged conduct at several of the company meetings, some of which were attended by upper-management. *Id.* at 88:4-9 ("I did it in the middle of company meetings."); *Id.* at 11:17-24 ("There may have been conversations in certain meetings where there [were] other higher-ups in the company that were at the meeting."). Further, Dortch, who was the AmeriGas representative who actually informed Plaintiff of his termination, was also copied on the email sent by Podlaski contemplating such action be taken. ECF No. [25-8]. For the purposes of a motion for summary judgment, the Court draws all reasonable inferences in the light most favorable to the Plaintiff as the non-moving party. Here, it is reasonable to infer that

14

the management at AmeriGas could confer and/or inform one another of issues being raised by the company's employees.

Additionally, it is also reasonably inferred that Dortch could have on numerous occasions notified the company's decisionmakers of Plaintiff's complaints. Further, Plaintiff testified that Podlaski was present at some of the meetings in which he voiced his complaints. Ritenour Dep., ECF No. [25-1], at 113:21-114:7. In addition to Dortch, Podlaski could have also notified the decisionmakers of Plaintiff's complaints and the statements being made. Accordingly, the Court finds that there is evidence supporting that the decisionmakers could have been aware of Plaintiff's complaints, and thus disagrees with the Defendant that it is "undisputed that the AmeriGas employees who made the decision to terminate Plaintiff's employment had no knowledge of Plaintiff's alleged complaints." ECF No. [26], at 2. "However, causation is not established by mere awareness alone." *Bell v. Georgia-Pac. Corp.*, 390 F. Supp. 2d 1182, 1192 (M.D. Fla.), *aff'd sub nom. Bell v. Georgia-Pac. Corp*, 153 F. App'x 701 (11th Cir. 2005).

Nonetheless, the Court agrees with the Defendant that the Plaintiff has failed to establish a *prima facie* case under the FWA because he has not shown a causal connection between the expression itself and his termination. To the extent that Plaintiff relies on the temporal proximity of his expression and his termination, such reliance is insufficient to avoid summary judgment. "Close temporal proximity between the protected activity and the adverse employment action can show that the two events were not wholly unrelated." *Fla. Dep't of Children and Families v. Shapiro*, 68 So. 3d 298, 306 (Fla. 4th DCA 2011) (citing *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007)). According to the Eleventh Circuit, however, "mere temporal proximity, without more, must be 'very close.'" *Thomas*, 506 F.3d at 1364 (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ((holding action taken 20 months later "suggests,

15

by itself, no causality at all") (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001) (3-month period insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (4-month period insufficient)). "If there is a substantial delay between the two events, the plaintiff must present other evidence tending to show causation." *Shapiro,* 68 So.3d at 1364. In other words, "in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas*, 506 F.3d at 1364.

Although the record is imprecise, the record evidence reflects that Plaintiff allegedly objected to AmeriGas' business practices over the course of employment beginning in mid-2014 and continuing through 2016. Plf's SOF, ECF No. [29], at ¶¶ 6, 138. Plaintiff has presented no evidence, however, indicating that he complained about the Unnecessary Deliveries or the Overfilling at or around the date in which he was terminated. Rather Plaintiff generally claims he participated in the protected activity numerous times throughout his employment with AmeriGas. Plaintiff, however, was terminated on February 2, 2016. Plf's SOF, ECF No. [29], at ¶ 2. The undisputed fact that Plaintiff remained employed with Defendant for more than two years after he began objecting to AmeriGas' alleged unlawful business practices undermines his retaliation claim, particularly in the absence of any other evidence of retaliation. Accordingly, the temporal relationship between Plaintiff's objections to the Defendant's business practices and his termination does not suggest a causal connection between the events. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citation omitted) ("[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law."); *Drago v. Jenne*, 453

16

F.3d 1301, 1308 (11th Cir. 2006) (finding 3-month gap between protected expression and adverse action insufficient to show causation).

Further, and fatal to Plaintiff's claim, is the presence of several intervening acts of misconduct. While the Plaintiff may not have agreed with the policies in place at AmeriGas, it is undisputed that Plaintiff's employment history with the company was replete with safety driving violations. Additionally, as highlighted by the Defendant in its Motion, Plaintiff signed paperwork confirming many of these instances. ECF No. [26], at 14. Further, Plaintiff has also admitted to committing several of the safety violations. *See* Ritenour Dep., ECF No. [25-1], at 123:10-14, 123:24-124:12; *see also* Plf's SOF, ECF No. [29], at ¶¶ 26, 29, 32, 42, 43, 46, 49, 52, 54, 55, 57, 60.

Further, the Eleventh Circuit has held that "[i]ntervening acts of misconduct can break any causal link between the protected conduct and the adverse employment action." *Henderson v. FedEx Express*, 442 F. App'x 502, 506 (11th Cir. 2011); *see also Hankins v. AirTran Airways, Inc.*, 237 F. App'x 513, 520–21 (11th Cir. 2007) ("This intervening act of misconduct, which was plainly in violation of Rules 1 and 14 of AirTran Airways Crew Member Handbook, severed the causal connection (if any) between Hankins' initial complaint of discrimination and AirTran's decision to terminate her employment. . . . Despite a close proximity in time between these events, the evidence establishes that Hankins' flagrant act of misconduct broke the causal chain."); *DeLeon v. ST Mobile Aerospace Eng'g, Inc.*, 684 F. Supp. 2d 1301, 1325–26 (S.D. Ala. 2010) ("The Eleventh Circuit has made clear that even if a plaintiff is terminated in close temporal proximity to a complaint of discrimination, a plaintiff's intervening act of misconduct severs the causal connection between the employee's initial complaint of discrimination and the decision to terminate her employment. . . . Specifically, Plaintiffs' intervening act of misconduct—failing to

report for work when scheduled—severed the causal connection between their initial complaint of harassment and MAE's decision to terminate their employment.").

Here, it is undisputed that the Plaintiff was suspended on February 2, 2016, for a safety violation that the Plaintiff himself concedes was the company's "biggest issue" with him. Ritenour Dep., ECF No. [25-1], 119:17-21. While Plaintiff disputes that the Drivecam system is always accurate in determining whether an actual violation occurred, he does not dispute that the Drivecam was "triggered" on that day. Plf's SOF, ECF No. [29], at ¶ 62. As evidenced by the "Employee Disciplinary Report," dated February 1, 2016, Plaintiff was suspended for cornering at an excessive speed. ECF No. [25-5], at 12. The Employee Disciplinary Report notes that Defendant had addressed this very issue with the Plaintiff "many times." *Id.* Subsequent to Plaintiff's suspension, another Drivecam event was reported that showed another instance of "cornering" on February 1, 2016. Deft's SOF, ECF No. [25], at ¶ 60; *see also* ECF No. [25-8]. Podlaski then emailed the video to the decisionmakers, who ultimately decided to elevate the Plaintiff's suspension to a termination the very next day. Deft's SOF, ECF No. [25], at ¶ 72; *see also* ECF No. [25-8].

The Court notes that no record evidence exists that after Plaintiff was suspended on February 1, 2019, he complained to anyone at AmeriGas about the Defendant's alleged unlawful business practices. There is, therefore, no evidence that the Plaintiff was engaged any form of protected activity at or near the time of his termination. Indeed, the record reflects that the Plaintiff violated AmeriGas' safety policy and was reprimanded in the form of a suspension. The company then received a report of another safety violation for which the Plaintiff was again reprimanded, but this time in the form of a termination. The Plaintiff's misconduct in violating AmeriGas' safety violations, therefore, severs any causal connection between the alleged expression of the protected

18

activity and his termination. The Court therefore finds that Plaintiff has failed to establish a prima facie case for his FWA claims and no issue of fact exists with respect to the causation element.

In his Response in Opposition to Defendant's Motion, Plaintiff argues that the reasons proffered by the Defendant for his termination (the history of unsafe driving) were pretextual. ECF No. [28], at 13. Because Plaintiff has failed to establish a *prima facie* case, it is unnecessary for the Court to analyze this issue. *See Brown v. Alabama Dep't of Transp.*, 597 F.3d 1160, 1181-1182 (11th Cir. 2010) (noting that pretext becomes a relevant issue only after the plaintiff has established a *prima facie* case); *see also Henderson v. FedEx Express*, 442 Fed. Appx. 502, 507 (11th Cir. 2011).

### IV.  CONCLUSION

The Court finds that there is no genuine issue of material fact as to the element of causation and Plaintiff has failed to establish a prima facie case under Florida's Whistleblower's Act. As such, the Defendant's Motion for Summary Judgment must be granted.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment, **ECF No. [26]**, is **GRANTED**.
2. To the extent not otherwise disposed of, any scheduled hearings are **CANCELED**, all pending motions are **DENIED** as moot, and all deadlines are **TERMINATED**.
3. The Clerk of Court shall **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida this 15th day of March, 2019.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Case No. 18-cv-80574-BLOOM/Reinhart

Copies to:

Counsel of Record